**PUBLISHED**

Filed: February 15, 2006

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

OHIO VALLEY ENVIRONMENTAL
COALITION; COAL RIVER MOUNTAIN
WATCH; NATURAL RESOURCES
DEFENSE COUNCIL,
　　　　　　*Plaintiffs-Appellees,*

v.

WILLIAM BULEN, District Engineer,
U.S. Army Corps of Engineers,
Huntington District; ROBERT B.
FLOWERS, Lieutenant General, Chief
of Engineers and Commander of the
U.S. Army Corps of Engineers,
　　　　　　*Defendants-Appellants,*

and

WEST VIRGINIA COAL ASSOCIATION;
KENTUCKY COAL ASSOCIATION; OHIO
COAL ASSOCIATION; COAL
OPERATIONS AND ASSOCIATES,
INCORPORATED; NATIONAL MINING
ASSOCIATION; GREEN VALLEY COAL
COMPANY,
　　　　　　*Intervenors-Defendants,*

CONSOL OF KENTUCKY, INCORPORATED,
　　　　　　*Party in Interest.*

No. 04-2129(L)
(CA-03-2281-3)

# O R D E R

Before the Court is the appellants' petition for rehearing en banc.

An active judge having called for a poll of the Court on the appellants' petition for rehearing en banc, such poll has been conducted and has failed to garner majority support of the active judges. Judges Michael, Motz, and King voted in favor of rehearing en banc, whereas Judges Widener, Niemeyer, Luttig, Shedd, and Duncan voted against rehearing en banc. Chief Judge Wilkins, along with Judges Wilkinson, Williams, Traxler, and Gregory, deemed themselves disqualified and did not participate.

Pursuant to the foregoing, the petition for rehearing en banc is denied.

Judge King wrote an opinion dissenting from the denial of rehearing en banc, which was joined by Judge Michael and Judge Motz and is filed herewith.

For the Court

/s/ Patricia S. Connor
Clerk

KING, Circuit Judge, dissenting from the denial of rehearing en banc:

I write separately because, in my view, the Court should hear this case en banc. En banc consideration is warranted because the decision of my distinguished colleagues on the court's panel eviscerates the important distinction drawn by Congress between individual and general permits under section 404 of the Clean Water Act (the "CWA"), and it undermines the CWA's primary purpose of protecting the environment. As Judge Goodwin aptly explained in his district court opinion, the procedure implemented by the Corps of Engineers "allows an activity with the potential to have significant effects on the environment to be permitted without [the] . . . procedural hurdles" attendant to individual permitting, and it "is prohibited by the plain language,

the structure, and the legislative history of the Clean Water Act." *See Ohio Valley Envtl. Coal. v. Bulen*, CA-03-2281-3, slip op. at 24 (S.D. W. Va. July 8, 2004) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)). Moreover, this case is of exceptional importance, both because of the legal principles involved and the unnecessary environmental risks occasioned by the Corps' actions. *See* Fed. R. App. P. 36(a)(2) (providing that en banc consideration is warranted when "the proceeding involves a question of exceptional importance"). I therefore dissent from the denial of rehearing en banc.

Section 404 of the CWA authorizes the Corps to issue two types of permits ("individual" and "general") for the discharge of dredged or fill material into the navigable waters of the United States. Under section 404(a), the Corps may issue individual permits at specified disposal sites. As we have recognized, the issuance of a section 404(a) individual permit "requires a resource-intensive review that entails submission of voluminous application materials, extensive site-specific research and documentation, promulgation of public notice, opportunity for public comment, consultation with other federal agencies, and a formal analysis justifying the ultimate decision to issue or refuse the permit." *Crutchfield v. County of Hanover*, 325 F.3d 211, 214 (4th Cir. 2003). Because compliance in every case with the requirements of section 404(a) imposed a substantial burden on the Corps, Congress, in 1977, amended the CWA to explicitly authorize the Corps to issue general permits on a state, regional, or nationwide basis for discharges associated with categories of similar activities. *See* § 404(e). Aware that allowing the Corps to proceed in a general manner could undermine the CWA's core goal of protecting the environment, Congress authorized the Corps to issue a general permit *only* if it first "determines that the activities in such category . . . will cause only minimal adverse environmental effects," both individually and cumulatively. § 404(e)(1). The corollary, of course, is that if the Corps is unable to make the required minimal-effects determination, it is obliged to utilize the more cumbersome procedures mandated by section 404(a), and to issue individual permits only.

In this case, the Corps failed to make the required determination of minimal environmental impact *before* it issued the general permit at issue. Instead, it set up mechanisms that would work to minimize the

environmental effects of specific projects, on a case-by-case basis, *after* the general permit issued. To be clear, I agree with the panel decision that section 404(e) does not bar the Corps from making post-issuance evaluations to ensure that the permitted activities cause only minimal adverse effects to the environment. The Corps' ability to make such *post-issuance* evaluations, however, does not relieve it of the responsibility of making the *pre-issuance* determination mandated by section 404(e). The panel has concluded (erroneously, in my view) that the Corps made the required minimal-effects determination before it issued the general permit. But other than the Corps' bald conclusions that the permitted activities would have minimal environmental impacts, the panel was able to muster from the administrative record sparingly few examples that even suggest the Corps thought about potential environmental effects before it issued the general permit. *See Ohio Valley Envtl. Coal. v. Bulen*, 429 F.3d 493, 499-500 (4th Cir. 2005).

Moreover, the panel has ignored the numerous indications that the Corps deferred its obligation to make minimal-effects determinations until after the general permit was in place. Because the post-issuance procedure of the general permit merely parroted section 404(e)'s standard of review, the Corps could have responded to *any* pre-issuance objection to the permit with the assurance that the post-issuance procedure would take care of the problem. And the record suggests that the Corps did just that: at the reissuance of the general permit in 2002, the Corps noted that "[a] majority of the commenters opposed its reissuance because of potential [environmental] impacts," but the Corps responded *only* by saying that "[t]hese issues will be evaluated during the case specific minimal effects determination" provided for in the post-issuance procedure. 67 Fed. Reg. 2020, 2041 (Jan. 15, 2002). This deferral contravenes section 404(e)'s straightforward expectation that a meaningful debate about environmental impact will occur *before*, rather than after, the Corps issues a general permit.

The defendants assert that the petition for rehearing en banc merely raises an issue of fact unworthy of en banc review. That characterization of the petition, however, ignores the exceptional legal ramifications of the panel's decision. As explained above, the primary distinction between an individual permit (under section 404(a)) and a general permit (under section 404(e)) is that a general permit

requires a pre-issuance determination of minimal environmental effects. In upholding a general permit for which the Corps failed to make the required pre-issuance determinations, the panel has effectively rendered section 404(a) a nullity, for if the Corps is not required to make a pre-issuance minimal-effects determination, it will inevitably utilize the less burdensome — and more environmentally risky — permitting procedures of section 404(e).

Finally, this case is of exceptional importance to the nation and, in particular, to the states in the Appalachian region. *See* Fed. R. App. P. 36(a)(2). The Appalachian mountains, the oldest mountain chain in the world, are one of the nation's richest, most diverse, and most delicate ecosystems, an ecosystem that the mountaintop coal mining authorized by the Corps' general permit may irrevocably damage or destroy. In enacting the CWA, Congress mandated the protection of our environment through strict procedural requirements. The panel's decision, in authorizing the Corps to skirt the CWA-mandated permitting process, undermines the enactment's primary purpose and poses unnecessary risks to one of this nation's great places. In further support of this dissent, I adopt Judge Goodwin's fine opinion for the district court. *See Ohio Valley Envtl. Coal. v. Bulen*, CA-03-2281-3 (S.D. W. Va. July 8, 2004).

I respectfully dissent from the denial of rehearing en banc, and I am pleased to state that Judge Michael and Judge Motz join in this opinion.